GREENBERG TRAURIG, LLP
JOHN M. GATTI (SBN 138492)
JOHN J. LUCAS (SBN 216236)
LORI CHANG (SBN 228142)
2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
Telephone: (310) 586-7700
Facsimile:  (310) 586-7800

Attorneys for Plaintiff
CONTENDER PARTNERS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTENDER PARTNERS, LLC, a California limited liability company,<br><br>          Plaintiff,<br><br>vs.<br><br>AZTECA INTERNATIONAL CORPORATION, a Delaware corporation and d/b/a AZTECA AMERICA, RED AZTECA INTERNATIONAL, S.A. de C.V., a Mexican corporation, TV AZTECA, S.A. de C.V., a Mexican corporation and d/b/a TV AZTECA, and MAPITV, INC., a New Jersey corporation,<br><br>          Defendants. | CASE NO. CV 08-02026 MMM (JTLx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MAPITV, INC.; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Filed concurrently with:**<br>**Declarations of S. Cru and L. Chang; [Proposed] Order**<br><br>DATE:      December 8, 2008<br>TIME:      10:00 a.m.<br>JUDGE:    Hon. Margaret M. Morrow<br>CRTRM:   780 |

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** that on December 8, 2008, at 10:00 a.m., in courtroom 780 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, California, Plaintiff Contender Partners, LLC ("Plaintiff") will and hereby does move for a default judgment against defendant MapiTV, Inc. ("MapiTV") for (1) damages (trebled) for violation of the Lanham Act, in the amount of $510,000; (2) statutory damages for copyright infringement, in the amount of $6,300,000; (3) a permanent injunction pursuant to Fed. R. Civ. P. 65 in the form attached as a proposed order; and (4) attorneys' fees in an amount pursuant to the schedule set forth in Local Rule 55-3, and costs of suit.

This Motion is made on the grounds that:

1.      Default was entered against MapiTV on August 7, 2008.

2.      MapiTV is not an infant, incompetent, in military service or otherwise exempted from default judgment under the Soldiers and Sailors' Civil Relief Act of 1940.

3.      Notice of the amount requested by Plaintiff in judgment has been made to MapiTV concurrently with the filing of this motion.

4.      Default judgment in favor of Plaintiff against MapiTV is justified in light of the substantive merits of Plaintiff's claims, the sufficiency of Plaintiff's Amended Complaint, the amount of money at stake in this action, the possibility of prejudice to Plaintiff if relief is denied, the lack of any possible dispute with respect to any material fact in the case, and that MapiTV's default did not result from excusable neglect.

Plaintiff seeks actual damages and statutory damages in an amount certain for violations of the Lanham Act and Copyright Act, respectively.

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff further seeks attorneys' fees pursuant to the Lanham Act (15 U.S.C. § 1117(b)) and Copyright Act (17 U.S.C. § 505).

In addition, Plaintiff is entitled to a permanent injunction in the proposed form submitted with this Motion.

This Motion is based upon the entry of default against MapiTV, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Lori Chang and C. Scot Cru, all pleadings and papers on file in this action, and such other and further evidence and argument which may be presented at the hearing on this Motion.

DATED:  November 10, 2008

Respectfully Submitted,

GREENBERG TRAURIG, LLP

By:/S/ John M. Gatti
       John M. Gatti
       John J. Lucas
       Lori Chang

Attorneys for Plaintiff
CONTENDER PARTNERS, LLC

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
LA 127,757,362v4 11-10-08

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ....................................................................................1

II. FACTUAL BACKGROUND....................................................................3

    A.  *The Contender* ..............................................................................3

    B.  Plaintiff Owns All Intellectual Property Rights To *The Contender* ..........3

        1.  *The Contender* Name And Trademark...............................4

        2.  *The Contender*'s Copyrighted Episodes And Series Format...........4

    C.  *Retador Azteca* ..............................................................................6

    D.  Irreparable Harm To Plaintiff And *The Contender* Series.......................10

III. ARGUMENT.........................................................................................11

    A.  Legal Standard For Granting A Default Judgment .................................11

    B.  MapiTV Is Liable For Damages Under The Lanham Act .......................12

        1.  MapiTV Violated The Lanham Act By Infringing Plaintiff's Marks12

            (a)  Similarity Of The Marks..................................14

            (b)  The Contender Mark Is Strong ...............................15

            (c)  Proximity Or Relatedness....................................17

            (d)  Marketing Channels Overlap................................17

            (e)  MapiTV Intentionally Copied *The Contender* Mark..............17

            (f)  Plaintiff Sought To Further Expand *The Contender* Series Into The Spanish-Language Market ....................................18

        2.  Plaintiff's Damages For Trademark Infringement .......................18

    C.  MapiTV Is Liable For Statutory Damages For Copyright Infringement.20

        1.  *Retador Azteca* Is Substantially Similar To *The Contender*..........20

        2.  Statutory Damages Calculation..........................................22

    D.  Plaintiff Is Entitled To Permanent Injunctive Relief Under The Lanham Act And Copyright Act .........................................................23

    E.  Plaintiff Is Entitled To Recover Its Attorneys' Fees...............................24

IV. CONCLUSION......................................................................................25

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adidas Am., Inc. v. Payless Shoesource, Inc.*,
   No. CV 01-1655-KI, 2008 WL 4279812,
   at *11 (D. Or. Sep. 12, 2008) ...............................................................18, 19

*Amoco Prod. Co. v. Village of Gambell, AK*,
   480 U.S. 531 (1987) ......................................................................................23

*Banff, Ltd. v. Federated Dep't Stores, Inc.*,
   841 F.2d 486 (2d. Cir. 1988) ........................................................................15

*Brookfield Communc'ns, Inc. v. West Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ......................................................................16

*Brown Bag Software v. Symantec Corp.*,
   960 F.2d 1465 (9th Cir. 1992) ......................................................................20

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*,
   448 F.3d 1118 (9th Cir. 2006) ......................................................................12

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
   782 F. Supp. 457 (N.D. Cal. 1991).............................................................15

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992).............................................15, 16, 17, 18

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) ......................................................................11

*Fair Housing of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002) ........................................................................11

*Geddes v. United Fin. Group*,
   559 F.2d 557 (9th Cir. 1977) ........................................................................12

*Halo Mgmt., LLC v. Interland, Inc.*,
   308 F. Supp. 2d 1019 (N.D. Cal. 2003) ....................................................13

*In re Alfonso Eng Perez*,
   21 U.S.P.Q. 2d 1075 ......................................................................................14

*In re Am. Safety Razor Co.*,
   2 U.S.P.Q. 2d 1459 ........................................................................................14

*James v. Frame*,
   6 F.3d 307 (5th Cir. 1993) ............................................................................11

*Kos Pharm., Inc. v. Andrx Corp.*,
 369 F.3d 700 (3d Cir. 2004) ...................................................................17

*Lois Sportswear USA, Inc. v. Levi Strauss & Co.*,
 799 F.2d 867 (2d Cir. 1986) ...................................................................15

*Microsoft Corp. v. McGee*,
 490 F. Supp. 2d 874 (S.D. Ohio 2007)................................19, 22, 23, 24

*Narell v. Freeman*,
 872 F.2d 907 (9th Cir. 1989) ..................................................................20

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
 469 U.S. 189 (1985) ................................................................................24

*Perfumebay.com, Inc. v. Ebay Inc.*,
 506 F.3d 1165 (9th Cir. 2007)..................................................12, 13, 14

*Pizzeria Uno Corp. v. Temple*,
 747 F.2d 1522 (4th Cir. 1984) ................................................................14

*Popular Bank of Fla. v. Banco Popular De P.R.*,
 9 F. Supp. 2d 1347 (S.D. Fla. 1998).......................................................14

*Shaw v. Lindheim*,
 919 F.2d 1353 (9th Cir. 1990) ................................................................20

*Survivor Prods. LLC v. Fox Broad. Co.*,
 No. CV01-3234, 2001 WL 35829270,
 at *3 n.2 (C.D. Cal. June 12, 2001) ........................................................20

*Three Boys Music Corp. v. Bolton*,
 212 F.3d 477 (9th Cir. 2000) ..................................................................20

**State Cases**

*Day v. AT&T Corp.*,
 63 Cal. App. 4th 325 (1998) ...................................................................13

**Statutes**

15 U.S.C. § 1114(1)(a) ...................................................................................12

15 U.S.C. § 1115(a) .......................................................................................12

15 U.S.C. § 1116(a) .......................................................................................23

15 U.S.C. § 1117(a) .......................................................................................18

15 U.S.C. § 1117(b) ................................................................................19, 24

17 U.S.C. § 502(a) .........................................................................................23

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

17 U.S.C. § 504(c)(1) ...........................................................................................22

17 U.S.C. § 504(c)(2) ...........................................................................................23

17 U.S.C. § 505 ....................................................................................................24

Cal. Bus. & Prof. Code § 17200 .........................................................................13

Cal. Bus. & Prof. Code § 17205 .........................................................................14

Fed. R. Civ. Proc. 55(b) ......................................................................................12

## **Rules**

Rule 55(a) ............................................................................................................11

Rule 55-1 .............................................................................................................12

## **Other Authorities**

Copyright Act .................................................................................................23, 24

Lanham Act ...........................................................................................12, 19, 23, 24

Soldiers' and Sailors' Civil Relief Act of 1940 ..................................................12

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Contender Partners, LLC ("Plaintiff" or "Contender Partners") brings this motion for default judgment against defendant MapiTV, Inc. ("MapiTV") for trademark and copyright infringement, and unfair competition.[1]  Plaintiff owns all trademarks, copyrights and other intellectual property in *The Contender*, a successful reality-based television series that ran for three seasons domestically and in syndication, and spun-off international versions of the series under similar titles.  Declaration of S. Cru ("Cru Dec.") (attached as Chang Dec., Ex. C) ¶¶ 3-4; Compl. ¶ 2.  *The Contender* is a show that follows two teams of boxers who compete for a championship prize.  Cru Dec. ¶ 9; Compl. ¶ 21.  MapiTV, a television production company, produced its own reality TV show known as *Retador Azteca* that is a blatant knock-off of *The Contender*.  *See* Cru Dec. ¶¶ 26-29; Compl. ¶¶ 33-34; Declaration of M. Montero ("Montero Dec.") (attached as Chang Dec., Ex. D) ¶¶ 1-2.

Default was entered against MapiTV on August 7, 2008.  *See* Chang Dec., Ex. A. MapiTV never filed an answer or other pleading in response to Plaintiff's complaint.  *Id.* ¶ 9.  MapiTV further ignored discovery requests that were served by Plaintiff.  *Id.* ¶ 10. MapiTV's default was not the result of excusable neglect.  *See id.* ¶¶ 9-10.

Default judgment is warranted here because the Court has previously determined that Plaintiff is likely to succeed on its trademark claim; and, the pleadings *and evidence* are sufficient to establish MapiTV's liability on this and other of Plaintiff's claims. *Retador Azteca*, is a blatant knock-off of *The Contender*, a reality-based television show that follows two teams of boxers who compete for a championship prize.  In creating *Retador Azteca*, MapiTV and the Azteca Defendants appropriated both the name (in

---

[1]  These claims refer to the first, second and fifth causes of action set forth in Plaintiff's Amended Complaint ("Compl."), attached as Exhibit B to the Declaration of Lori Chang ("Chang Dec."), filed concurrently herewith.

Spanish) and format of *The Contender*.[2]  MapiTV is liable for trademark infringement because the mark *Retador Azteca* is substantially similar to Plaintiff's federally registered mark, *The Contender*, as "el retador" is the Spanish equivalent of "the contender." Moreover, Plaintiff previously used the title, *The Contender:  El Retador*, in airing Spanish-dubbed episodes of *The Contender*.  Cru Dec. ¶ 16.  Although the Court denied Plaintiff preliminary injunctive relief, it nonetheless concluded that the balance of the *Sleekcraft* factors weighed in favor of Plaintiff to support Plaintiff's claims for trademark infringement and unfair competition.  *See* Court's Order (attached as Chang Dec., Ex. E) at pp. 34-36.

The pleadings and evidence are also sufficient to hold MapiTV liable for copyright infringement.  Indeed, members of MapiTV's production team deliberately watched episodes of *The Contender* to copy content to use as material for *Retador Azteca* (*see* Declaration of E. Renteria ("Renteria Dec.") attached as Exhibit F to the Chang Dec., Ex. F, ¶ 4), and falsely represented to boxing promoters that *Retador Azteca* was *The Contender* in Spanish in order to solicit their participation (*see* Declaration of C. Morton ("Morton Dec."), attached as Exhibit G to the Chang Dec., ¶¶ 2-3).  MapiTV's use of "retador" and copying of actual dialogue from *The Contender* series in conjunction with a show that follows the same format as *The Contender* has caused confusion among both viewers and boxing promoters who were directly involved in the production of *Retador Azteca*.  *See* Morton Decl. ¶¶ 2-3; Compl. ¶¶ 37, 46.

By producing and broadcasting a rip-off of *The Contender*, MapiTV has caused Plaintiff to suffer irreparable harm to its goodwill and reputation.  Viewers and actual participants in the boxing industry have confused the two series, and were even mistakenly misled into believing that Plaintiff was involved with or otherwise authorized the production of *Retador Azteca*.  The harm resulting from this confusion is worsened by

---

[2] The Azteca Defendants refer to Azteca International Corporation, Red Azteca International, S.A. de C.V., and TV Azteca, S.A. de C.V.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*LA 127,757,362v4 11-10-08*

the fact that *Retador Azteca* is regarded as a "cheap" version of *The Contender*, and its filming involved knowing violations of California state law for holding illegal boxing matches that were not sanctioned by the California State Athletic Commission.

## II.   FACTUAL BACKGROUND

**A.**   ***The Contender***:  "The Next Great Human Drama"

*The Contender* is a successful reality TV show that depicts the lives of aspiring boxers who compete in a series of bouts that culminate in a grand finale tournament.  *See* Cru Dec. ¶¶ 6-7; Compl., ¶ 16.  More than a boxing sports program, *The Contender* is "an unscripted drama about the lives, fears and hopes" of its contestants who "compete for the chance to forever change their lives and the lives of the people they love."  Cru Dec. ¶ 6; Compl. ¶ 20.  *The Contender* was created and produced by Mark Burnett Productions, a member of Contender Partners, LLC.  Cru Dec. ¶¶ 1-2, 6; Compl. ¶ 16.  Plaintiff and Mark Burnett Productions are world-renowned producers and creators of numerous reality TV shows that have attained worldwide success, including *The Contender*, *Survivor* and *The Apprentice*.  Cru Dec. ¶ 6; Compl. ¶ 16.

Season 1 of *The Contender* premiered in March 2005 and ran for a total of 15 weeks on the National Broadcasting Channel ("NBC") television network.  Cru Dec. ¶ 3; Compl. ¶ 17.  Subsequent seasons (Seasons 2 and 3) aired in 2006 and 2007 on the ESPN network, and re-run episodes from these seasons were recently broadcasted on various ESPN channels.  *See* Cru Dec. ¶ 3; Compl. ¶ 17.  In addition, the series was internationally syndicated in countries such as the United Kingdom and India.  Cru Dec. ¶ 4; Compl. ¶ 18.  *The Contender* also spun off international versions known as *The Contender Challenge:  UK v. USA*, which premiered in March 2007, and *The Contender Asia*, which began airing in January 2008.  Cru Dec. ¶ 4; Compl. ¶ 18.

**B.**   **Plaintiff Owns All Intellectual Property Rights To *The Contender***

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1.   *The Contender* Name And Trademark

Plaintiff owns the entire right, title, and interest in and to *The Contender*'s mark which was registered with the United States Patent and Trademark Office and assigned Registration Nos. 3354449 and 3220507.  Cru Decl. ¶ 12, Ex. C; Compl. ¶ 40.  *The Contender* mark is in full force and effect.  Compl. ¶ 40.  Copied below is the image of *The Contender* mark and logo:



Plaintiff uses *The Contender* mark in connection with the production, broadcast, and promotion of *The Contender* reality TV series, including all international versions of *The Contender*.  Cru Dec. ¶ 13; Compl. ¶ 41.  In addition, Plaintiff has used *The Contender* mark to promote several live boxing specials through Tournament of Contenders, LLC, the boxing promotional entity for *The Contender*.  Cru Dec. ¶ 13.  These live boxing programs include:  "The Contender Special: Rematch" at the Staples Center in Los Angeles, California; "The Contender Special:  Pride of Providence," at the Dunkin' Donuts Center in Providence, Rhode Island; and "The Contender Special:  Latin Warriors," at the Aladdin Resort & Casino in Las Vegas.  "The Contender Special:  Latin Warriors" featured top Hispanic boxers and aired as live programming on the ESPN network in 2006.  *Id.*

2.   *The Contender*'s Copyrighted Episodes And Series Format

Plaintiff is also the owner of copyrights to each episode of *The Contender* series, which follows a unique tournament-style competition and elimination that emphasizes the individual lives and personal stories of its contestants who are generally unknown, amateur or quasi-professional boxers.  Cru Dec. ¶¶ 6-7, 11; Compl. ¶¶ 20, 22 and 52.  Each episode is modeled after a specific format that consists of the following elements:

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LA 127,757,362v4 11-10-08

➢ <u>Plot</u>:  *The Contender* is a reality TV show that combines the sport of boxing with a dramatization and portrayal of the private lives of its contestants and their personal struggles.  The series follows two teams of boxers assembled to compete with one another for a grand cash prize.  It is an elimination-based competition where the contestants advance or are eliminated through boxing matches.

➢ <u>Theme</u>:  *The Contender* is a story about both the physical and emotional challenges facing aspiring boxers who compete to advance in not just this competition but generally in their lives.  This theme is summed up in the series' motto, "The Next Great Human Drama."

➢ <u>Mood</u>:  The series conveys a hard, masculine, gritty, underground "street" feel to create an atmosphere of excitement and angst associated with both the actual competition (i.e., the boxing matches) and the personal dramas of each contestant.

➢ <u>Setting</u>:  There are four main backdrops to *The Contender*:  (i) living quarters, (ii) training gym, (iii) special challenge location, and (iv) boxing ring/tournament.  Both the living quarters, shared by all contestants who are sequestered in a dorm-like, group compound, and training facilities have a look and feel of an underground boxing gym (versus a trendy, upscale athletic club).  The series also incorporate weekly special non-boxing challenges that are set in various locations (e.g., the Rose Bowl).  The final tournament itself is presented like a professional title match, where the remaining contestants compete for the ultimate title and purse awarded by *The Contender* series.  In Season 1, the finale took place at Caesar's Palace in Las Vegas.

➢ <u>Characters</u>:  The host and sometimes trainer for *The Contender* (domestic version) is former boxing champion "Sugar" Ray Leonard.  The contestants

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

are all unknown, aspiring male boxers with limited experience as amateur or quasi-professional boxers.  They are portrayed as the "Rocky Balboa" archetype, i.e., a young athlete with raw talent who overcomes obstacles and achieves his potential by advancing in an athletic competition and gaining self-confidence in the process.  All contestants qualify within the same weight class, and come from lower to middle-class backgrounds.  Families and close friends of the boxers make regular appearances in segments that focus on the personal lives of the contestants.

➤ Sequences of events:  The contestants form two equal-numbered teams, segregated by origin (e.g., East Coast v. West Coast boxers, as in Season 1; and U.S. v. United Kingdom boxers, as in *The Contender Challenge:  UK v. USA*).  One fighter from each team competes in an elimination boxing match that occurs in each episode leading up to the finale.  Each episode features a segment on the individual contestants; a physical challenge segment that determines who will fight in the weekly match; and a boxing match. Contestants advance by winning bouts, and winners of the first eight matches are guaranteed spots in the quarter finals.  The tournament consists of quarter finals, semifinals, and the finale, where the winner of the championship bout is the ultimate winner of the season's competition.

Cru Decl. ¶¶ 8-10 and Ex. B (DVD copy of *The Contender* episode); Compl. ¶ 21.

**C.   *Retador Azteca*:  A Knock-Off Of The Contender**

Since 2005, Plaintiff has licensed Spanish-dubbed episodes of *The Contender* for broadcast on Spanish language networks in both the U.S. and in Mexico.  Cru Dec. ¶ 14; Compl. ¶¶ 23-24.  One licensee, the Discovery Network ("Discovery"), aired these episodes as *The Contender:  El Retador*, on its People+Arts channel.  Cru Dec. ¶ 14; Compl. ¶ 23.  "El Retador" translates in English to "The Contender."  Cru Dec. ¶ 14; Compl. ¶ 23.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*LA 127,757,362v4 11-10-08*

1   In 2005 and 2007, Plaintiff also granted the Azteca Defendants a license to

2   broadcast Spanish-dubbed episodes of *The Contender* in Mexico.  *Id.* ¶ 15, Exs. E, F

3   (license agreements); Compl. ¶¶ 26-27.  The 2005 and 2007 license agreements both

4   confirm Plaintiff's intellectual property rights in *The Contender*.  *See* Cru Dec., Exs. E, ¶

5   5 ("Licensor shall at all times be the sole exclusive owner of the copyright in each

6   Program throughout the universe.") and F, ¶ 7 (stating same); Compl. ¶ 27.

7   Having developed a viewer base through these grants, Plaintiff laid the

8   groundwork for further expansion into the Spanish-speaking market and in May 2007

9   pitched to the Azteca Defendants an opportunity to develop a Spanish-language version

10  of *The Contender*.[3]  *See* Compl. ¶¶ 29-30.  However, despite the Azteca Defendants'

11  initial participation and agreement to produce the new series, they abruptly ended their

12

13  [3] In May 2007, Plaintiff's principals, including Scot Cru, head of international

14  production at Mark Burnett Productions, met with representatives from Discovery

15  and the Azteca Defendants to discuss, in confidence, a prospective business

    opportunity for further expansion of *The Contender* series.  Cru Dec. ¶¶ 19-20, Ex.

16  I (e-mail from S. Cru to TV Azteca, explaining "We're going to produce THE

    CONTENDER in Mexico with Discovery.  They are interested in partnering with

17  you on production so you can both air the show."); Compl. ¶¶ 29, 69.  In that

    confidential meeting, Mr. Cru pitched to Discovery and the Azteca Defendants the

18  idea of co-producing a Spanish-language version of *The Contender* to be broadcast

19  in Latin America and on Spanish language channels in the U.S.  Cru Dec. ¶¶ 19-

    20; Compl. ¶ 29.  This initial pitch meeting evolved into subsequent discussions

20  and meetings, including one that took place in Mexico City, Mexico.  Cru Dec. ¶

21  21; Compl. ¶ 30.  During the initial meeting and through each subsequent

    discussion, the Azteca Defendants confirmed their interest in the project.  Cru Dec.

22  ¶¶ 20-21; *see also* Compl. ¶ 30. The concept was discussed in detail, including

23  discussions regarding the production costs for the series and how such costs would

    be shared.  Cru Dec., Exs. J, K.  The parties also exchanged information regarding

24  format availability and projected timelines.  *Id.*  At all relevant times, since the

25  initial pitch meeting, all parties agreed and understood that Plaintiff would receive

    a reasonable compensation in this venture -- both a producer's fee and licensing

26  fees -- even though specific fee terms were not finalized.  Cru Dec. ¶20; *see also*

27  Compl. ¶¶ 68-69.

28

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LA 127,757,362v4 11-10-08

talks with Plaintiff around July 2007.  Cru Dec. ¶ 25.  Instead, the Azteca Defendants decided to pursue a Spanish-language reality TV series--i.e., *Retador Azteca*--using the same concept and format as *The Contender*, but without Plaintiff's participation, license or authorization.  Cru Dec. ¶ 26; Compl. ¶ 31.  Episodes of *Retador Azteca* began airing in 2008.  Compl. ¶ 32.

 *Retador Azteca* is a reality TV series that follows the same format as the copyrighted episodes of *The Contender*:

> ➢ Plot, theme, and characters:  Like *The Contender*, *Retador Azteca* is a elimination-based, reality TV series whose contestants are unknown, aspiring male boxers with little or no professional boxing experience, who compete with each other in a series of boxing matches.  *Retador Azteca*, similarly, combines the bouts with a portrayal of the family and personal lives and struggles of each individual contestant.  It is also hosted by a former boxing champion (Jose "El Travieso" Arce).

> ➢ Setting, mood, and sequence of events:  The atmosphere conveys a similar "street," gritty look and feel. The contestants live and train together in a common compound.  They are also grouped into two team, segregated by origin (U.S. v. Mexican boxers), and advance by winning matches.  The competition culminates in a tournament where the championship match was scheduled to take place at Caesar's Palace (like Season 1 of *The Contender*).

Cru Dec. ¶¶ 27-29, Exs. L, O and P; Compl. ¶¶ 32-34.

 The combination of the sport and personal drama is being portrayed in the exact or substantially the same manner and format as the copyrighted episodes of *The Contender*. *See* Compl. ¶¶ 33-34.

 MapiTV contends that *Retador Azteca* was independently created (*see* Montero Dec. ¶ 14); but that contention is undermined by the very fact that *The Contender* was widely broadcasted in both English and Spanish-language markets at least 3 years prior to

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*LA 127,757,362v4 11-10-08*

the broadcast of *Retador Azteca* in 2008.  Moreover, third parties involved in the production of *Retador Azteca* have confirmed that MapiTV deliberately copied material from *The Contender* and represented to them that they were doing the same exact show as *The Contender*.  Specifically, at least one boxer who was initially selected as a fighter for *Retador Azteca*, witnessed a member of the *Retador Azteca* production team watching episodes of *The Contender* for the sole purpose of copying down questions that were asked of the boxers in *The Contender*, and answers given by those contestants, to use verbatim as material for *Retador Azteca*.  Renteria Dec. ¶ 4; *see also* Compl. ¶ 35.

In addition, MapiTV told boxing promoters and their fighters that the format for *Retador Azteca* was exactly the same as *The Contender*.  Morton Dec. ¶ 2; Renteria Dec. ¶ 3 ("The producers of *Retador* explained to me that the format for *Retador* was the same as *The Contender* boxing series.  I watched *The Contender* television show and having seen *Retador*, I know that the format for *Retador* is exactly the same as the format used for *The Contender*.").[4]

When Plaintiff learned that episodes of *Retador Azteca* were being broadcast through the Azteca Defendants' Spanish-language channel, Plaintiff's counsel immediately sent a letter to the defendants requesting that they cease and desist their infringing activities, but to no avail.  Cru Dec. ¶ 30; Compl. ¶ 45.

---

[4] The defendants have even publicly confirmed that they are using *The Contender* format for *Retador Azteca*.  Bob Turner, the president of network sales for Azteca America, explained that "Half of the show will be about the boxers, their families, their homes and how they got where they are," and "the other half is the actual boxing."  Cru Dec. ¶ 28, Ex. N; Compl. ¶ 34.  The defendants also admitted in an interview with the Los Angeles Times that they "adapted the show concept from the 2005 NBC series 'The Contender,' but with an international twist.'"  Cru Decl. ¶ 27, Ex. M.  This proclaimed "international twist," however, has been done before by Plaintiff through the production and broadcast of *The Contender Challenge: UK v. USA*, that pitted a U.S. team against a United Kingdom team.

9

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**D.      Irreparable Harm To Plaintiff And *The Contender* Series**

By broadcasting and promoting episodes of *Retador Azteca* that copy the same format of *The Contender* and use the same Spanish equivalent name, i.e., "retador," MapiTV is deliberately tying *Retador Azteca* to Plaintiff and/or *The Contender* in a way that causes confusion as to source or sponsorship, and to the detriment of Plaintiff's reputation. *See* Compl. ¶¶ 46, 50 and 59.  Indeed, in soliciting fighters, MapiTV falsely represented to boxing promoters and/or their boxers that *Retador Azteca* was "going to be The Contender" filmed in Spanish. *See* Morton Decl. ¶ 2.  Also, by using a name and logo similar to *The Contender*, at least one person who was directly involved with *Retador Azteca* had believed that producers of *The Contender* (i.e., Plaintiff) entered into an agreement with MapiTV, or were otherwise affiliated with *Retador Azteca*. *Id.* ¶ 3.

Moreover, viewers have wrongfully associated *Retador Azteca* with *The Contender* series. *See* Cru Decl. ¶¶ 33-36..  Viewers have expressly labeled *Retador Azteca* a "Mexican version" of *The Contender*. *Id.*  Viewers have also called it a "low budget" version of *The Contender*, where one person even complained that the purse "went from 1 Million to 50 G's," evidencing confusion with *The Contender* series where in Season 1 the cash prize was one million (and *Retador Azteca* would be awarding $50,000 in its finale). *See id.* ¶ 34.  Specifically, these viewers have expressed the following:

> ➢ "TV Azteca is doing a Mexican The Contender" (*Id.* ¶ 34, Ex. T);
> ➢ "OMG this shiet is called Retador Azteca…it is the Mexican version of the Contender.  Low budget like a mother phuker." (*Id.*);
> ➢ "Retador azteca is a new reality tv show that will be aired on azteca america tv….Damn!  They went from 1 Million to 50 G's…." (*Id.*);
> ➢ "Anyone watched Retador Azteca?  the mexican version of the contender, but with a much lower budget…" (*Id.* ¶ 33, Ex. S).

The confusion that Plaintiff is the source or sponsor of *Retador Azteca* further harms Plaintiff because it wrongfully associates Plaintiff with a series that has been cited

LA 127,757,362v4 11-10-08

by the California State Athletic Commission for holding illegal bouts in California. *Id.* ¶ 37, Ex. W; *see also* Morton Decl. ¶¶ 4-8 (MapiTV continued to hold and film illegal bouts in California and Nevada even after state authorities issues cease and desist orders); Renteria Decl. ¶ 2 (deciding not to fight in the matches held by *Retador Azteca* after learning that the matches were not properly licensed). *See also* Compl. ¶¶ 37, 43 and 46.

In addition to causing confusion among viewers, MapiTV has impeded Plaintiff's plans to develop a Spanish-language version of *The Contender*. Cru Decl. ¶ 39. *Retador Azteca* is competing in the same Spanish-language market that Plaintiff first developed through its license of Spanish-dubbed re-runs of *The Contender*, and that Plaintiff sought to further expand with an entirely new Spanish version of *The Contender*. *Id.*

## III.  ARGUMENT

### A.  Legal Standard For Granting A Default Judgment

In determining whether to grant a default judgment pursuant to Rule 55(a), a court considers a number of factors, including (a) the substantive merits of plaintiff's claim, (b) the sufficiency of the complaint, (c) the amount of money at stake, (d) the possibility of prejudice to plaintiff if relief is denied, (e) the possibility of dispute as to any material facts in the case, and (f) whether default resulted from excusable neglect. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). Where there is ample evidence in the record, no further evidentiary hearing is necessary. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (upholding award of punitive damages and attorneys' fees without evidentiary hearing).

Upon default, the defendant's liability is established through the well-pleaded allegations of the complaint. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."). The court can enter default judgment against a defendant as long as the defendant is not "an infant or incompetent person," and not otherwise exempt under the

Soldiers' and Sailors' Civil Relief Act of 1940.  Fed. R. Civ. Proc. 55(b); Local Rule 55-1 (C.D. Cal. 2007).  A plaintiff need only to prove up damages to obtain a default judgment.  *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

**B.**   **MapiTV Is Liable For Damages Under The Lanham Act**

    1.   MapiTV Violated The Lanham Act By Infringing Plaintiff's Marks

    MapiTV is liable for trademark infringement because Plaintiff has demonstrated "(1) that it has a protectible [sic] ownership interest in [*The Contender*] mark; and (2) that [MapiTV's] use of the [*Retador Azteca*] mark is likely to cause consumer confusion, thereby infringing upon [Plaintiff's] rights to the mark."  *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).  *See also* 15 U.S.C. § 1114(1)(a); *Perfumebay.com, Inc. v. Ebay Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007) ("The core element of trademark infringement is whether customers are likely to be confused about the source or sponsorship of the products.").[5]

    Plaintiff's ownership and the validity of *The Contender* mark is established through the federal registration of the mark, U.S. Trademark Registration Nos. 3,354,449 and 3,220,507.  *See* 15 U.S.C. § 1115(a) (registration of a mark is "prima facie evidence of the validity of the registered mark and…of the registrant's ownership of the mark"); and Court's Order at p. 13 ("As defendants do not challenge the validity of the registrations, plaintiff is the presumptive owner of a valid trademark.").

---

[5] Section 32 of the Lanham Act imposes liability upon any person who, without the consent of the registrant:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LA 127,757,362v4 11-10-08

Likelihood of confusion, on the other hand, is determined by balancing the *Sleekcraft* factors:

> (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets.

*Perfumebay.com*, 506 F.3d at 1173 ("The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them."). The Court previously concluded that on balance, the *Sleekcraft* factors weigh in favor of finding an infringement.[6]  *See* Court's Order at pp. 34-35.[7]

---

[6] The Court previously found that the evidence supported a finding in favor of Plaintiff for all but two of the *Sleekcraft* factors. First, regarding consumer care, the Court concluded that this factor was neutral, though rejected the defendants' argument that the appropriate "consumer" is the advertiser rather than the television viewer. Court's Order at pp. 31-32. Second, the Court found that Plaintiff's evidence regarding actual confusion was insufficient. *Id.* at 28. Evidence of actual confusion, however, is not essential to a trademark plaintiff seeking a preliminary injunction. *See Brookfield Commc'n*, 174 F.3d at 1050 ("The failure to *prove* instances of actual confusion is *not* dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.").

[7] Moreover, because MapiTV is liable for trademark infringement, it is also liable for unfair competition. *See Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1027 n.10 (N.D. Cal. 2003) (citing Cal. Bus. & Prof. Code § 17200) ("Federal trademark infringement and state unfair competition are in this sense coextensive:  Where a likelihood of confusion has been established for infringement purposes, it has been established for unfair competition purposes as well."); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998) (citations omitted) ("To state a cause of action under [section 17200] for injunctive relief, it is necessary only to show that 'members of the public are likely to be deceived.'").

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

(a)      Similarity Of The Marks

"'[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion.'  *Perfumebay*, 506 F.3d at 1174 (citations omitted) (finding the "requisite similarity" between  "Perfumebay" and "eBay," where the former "incorporates the eBay trademark in its entirety"; and "[a]lthough differences exist between the two marks, the fact that eBay's mark is a strong one weighs against Perfumebay").

The Court previously concluded that on balance, this factor weighs in favor of finding an infringement.  *See* Court's Order at p. 19.  The marks are similar because "retador" is a Spanish equivalent for "contender."  Compl. ¶¶ 23, 46-47; Chang Dec., Ex. A (definition from online Spanish-English dictionary); *see also* Court's Order, p. 1 ("[P]laintiff's evidence that at least one Spanish translation of 'contender' is 'retador' supports its argument that the meaning of the marks is confusingly similar.").[8]  The

---

Plaintiff does not seek damages on its unfair competition claim because such relief is cumulative.  Cal. Bus. & Prof. Code § 17205.

[8]  The Court previously noted that the Ninth Circuit had not yet adopted the doctrine of foreign equivalents, which applies when the accused infringer's mark is a foreign mark and "the foreign word is so descriptive of a product or is so much the equivalent of an existing common product as to create the likelihood of confusion."  *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1531 (4th Cir. 1984); *see also* Court's Order at n.70.  The Court nonetheless concluded that this doctrine was "pertinent to the meaning element of the similarity of the marks."  Court's Order at n. 70.  *See also Popular Bank of Fla. v. Banco Popular De P.R.*, 9 F. Supp. 2d 1347, 1359 (S.D. Fla. 1998) ("Under the doctrine of foreign equivalents, if a foreign phrase translated into English is exactly the same as the existing English trademark, the marks are considered to be confusingly similar.") (finding "banco popular" similar to "popular bank"); *In re Am. Safety Razor Co.*, 2 U.S.P.Q. 2d 1459, 1459 (Trademark Tr. & App. Bd. 1987) (affirming refusal of application to register "Buenos Dias" as a trademark for bar soap, because the applicant's mark is "the Spanish equivalent of the literal portion of the cited registered mark" for "Good Morning" used for shaving cream) and *In re Alfonso Eng Perez*, 21 U.S.P.Q. 2d 1075, 1076 (Trademark Tr. & App. Bd. 1991)

14

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

similarity of the marks is further supported by Plaintiff's prior use of the term "Retador" in the title to Spanish-dubbed episodes of *The Contender*, namely *The Contender:  El Retador*, that aired on Spanish-language channels, including on the Azteca Defendants' networks pursuant to the 2005 and 2007 license agreements.  Cru Decl. ¶14; *see also* Court's Order, pp. 17-18 ("[P]laintiff's use of 'El Retador' in connection with Spanish-dubbed version of The Contender suggests that television viewers who speak both Spanish and English would understand the meaning of 'retador' and translate the word as 'contender.'").  *Retador Azteca* was produced <u>after</u> episodes of *The Contender:  El Retador* were broadcast, and incorporates the Spanish equivalent of *The Contender* trademark in its entirety.[9]

> **(b)**   <u>The Contender Mark Is Strong</u>

"Trademark law offers greater protection to marks that are 'strong,' i.e., distinctive." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992).  "A registered mark is 'presumed to be distinctive and should be afforded the utmost protection.'" *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 462 (N.D. Cal. 1991) (quoting *Lois Sportswear USA, Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir. 1986)).  *The Contender* mark is a federally registered mark, and therefore is presumptively distinct and given the highest protection.  *Id.* ("Indeed, proper and current registration of a trademark is 'conclusive evidence of the validity of the

---

(affirming denial to register "El Gallo" for fresh vegetables (tomatoes and peppers), because "Rooster" mark is used for fresh citrus fruit; likely to cause confusion.; there was  "close relationship between the involved goods" and no question that "gallo" is Spanish for "rooster").

[9] Although "Azteca" is added to MapiTV's use of "Retador," courts have held that the use of the plaintiff's mark with a defendant's mark "may actually increase the misappropriation by linking defendant's name to plaintiff's goodwill."  *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 492 (2d. Cir. 1988) (finding Bloomingdale's use of term "B Wear" violated plaintiff's trademark in "Bee Wear," and "Bloomingdale's attachment of its company name below its standard typestyle 'B Wear' mark does not offset the mark's similarity").

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.'") ("Therefore, in light of Gallo's current federal registration of several versions of the 'Gallo' mark, plaintiff has established as an initial matter the validity and distinctiveness of the mark and Gallo's exclusive right to use the mark in promoting and selling its wines in the United States.").

*The Contender* mark is also suggestive because *The Contender* title does not automatically convey a clear idea that Plaintiff's "product" is a reality TV show that follows two teams of boxers and portray their struggles in and out of the ring.  *See Brookfield Communc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1058 n.19 (9th Cir. 1999) (a suggestive mark "conveys an impression of good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature"); *see also* Court's Order at p. 23, n. 85 ("Plaintiff may ultimately be able to prove that The Contender mark is suggestive, as it does not describe the particular show or its differentiating qualities.").

Further, a mark, even if not inherently distinctive, is strong if it carries "secondary meaning," i.e., "the consumer's association of the mark with a particular source or sponsor."  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d at 1291 (finding GALLO had acquired secondary meaning through the winery's "long, continued use of the mark, the mark's widespread, national public recognition, and the Winery's extensive and expensive advertising and promotion of products bearing the mark").  *The Contender* mark has also acquired secondary meaning among both domestic and international television viewers.  Plaintiff has used the mark since 2005, when *The Contender* series began airing nationally on broadcast television.  Plaintiff has used the mark also in connection with spin-offs, including the international versions of *The Contender* series and several live boxing specials promoted through Tournament of Contenders, LLC, and with ancillary products and merchandise.  *See* Court's Order at p. 25 ("Such facts as are

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

in the record…indicate that [*The Contender*] mark has developed at least some commercial strength, which, combined with the mark's presumed distinctiveness, suggests that plaintiff will likely be able to show this *Sleekcraft* factor weighs in is favor.").

(c)     Proximity Or Relatedness

"Where goods are related or complementary, the danger of consumer confusion is heightened." *E & J Gallo Winery*, 967 F.2d at 1291. *See also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 713 (3d Cir. 2004) ("'When the goods…are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products.'") (citation omitted, alteration in original). Here, the "goods" are virtually identical. MapiTV is using *The Contender* mark in conjunction with a reality TV series that follows the same concept and format as *The Contender* series. *See* Court's Order at p. 26 ("Defendants' concession that the parties' shows compete demonstrates adequately, for purposes of this proceeding, that they are proximate or related. Accordingly, the court finds that plaintiff will likely be able to prove this factor favors a finding of likelihood of consumer confusion.").

(d)     Marketing Channels Overlap

Both *The Contender* and *Retador Azteca* are being marketed on the Internet and through commercial broadcasts on television networks. *See* Cru Decl. ¶¶ 3, 6, Exs. A, O, P. Indeed, through the License Agreements, Plaintiff marketed Spanish-dubbed episodes of *The Contender* on the Azteca Defendants' own television channels, i.e. the same channels that are currently airing episodes of *Retador Azteca*. *See* Court's Order at p. 30 (finding this factor in favor of Plaintiff).

(e)     MapiTV Intentionally Copied *The Contender* Mark

This factor also weighs in favor of finding infringement because there is no question that MapiTV knew of *The Contender* mark and even its use of "El Retador" in connection with the broadcast of *The Contender* series under the title *The Contender: El*

1    *Retador.  See E & J Gallo Winery v. Gallo*, 967 F.2d at 1293 ("[W]hen the alleged

2    infringer knowingly adopts a mark similar to another's, reviewing courts presume that the

3    defendant can accomplish his purpose:  that is, that the public will be deceived."); *see*

4    *also* Court's Order at p. 33 (finding this factor weighed in favor of Plaintiff, and stating

5    that "[g]iven that defendants knew plaintiff had used El Retador as a synonym for The

6    Contender, it is arguable that they had an intent to deceive").

7                    (f)     Plaintiff Sought To Further Expand *The Contender* Series Into

8                            The Spanish-Language Market

9            "[A] strong possibility of expansion into competing markets weighs in favor of a

10   finding of infringement."  *E & J Gallo Winery*, 967 F.2d at 1293 (finding that the winery

11   had already entered into the cheese market, where defendant's mark is being used).  Here,

12   by 2005, Plaintiff had already entered into the Spanish-language market, and did so by

13   granting licenses to the Azteca Defendants to air Spanish-dubbed episodes of prior

14   seasons of *The Contender* on their Spanish-language networks.  Further, Plaintiff was

15   seeking to expand its reach in this market by licensing and producing a Spanish-language

16   version of *The Contender* (versus Spanish-dubbed episodes of prior seasons), and pitched

17   this very idea to the Azteca Defendants just a few months before they and MapiTV

18   misappropriated Plaintiff's proposition and began to produce and air infringing episodes

19   of *Retador Azteca* on Azteca America's Spanish-language channel.  Indeed, the Court

20   previously concluded that "[b]ecause plaintiff's intent to expand is undisputed, the court

21   finds that this factor weighs somewhat in favor of finding that plaintiff will be able to

22   prove a likelihood of consumer confusion.").  Court's Order at p. 34.

23           2.     Plaintiff's Damages For Trademark Infringement

24           Plaintiff is entitled to recover the MapiTV's profits, actual damages, and "costs of

25   the action."  15 U.S.C. § 1117(a).  *Adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV

26   01-1655-KI, 2008 WL 4279812, at *11 (D. Or. Sep. 12, 2008) ("[T]he Lanham Act

27   provides the court with considerable 'discretion to fashion relief, including monetary

28

---

18

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

relief, based on the totality of the circumstances.'") (citation omitted).  An award of profits or damages, whichever is greater, may further be trebled for a willful violation of the Lanham Act.  15 U.S.C. § 1117(b).

Because MapiTV defaulted on its discovery obligations, its profits generated from the production of *Retador Azteca* are unknown.  Accordingly, Plaintiff seeks to recover actual damages for trademark infringement in the amount of $170,000, based upon a reasonable royalty calculation.  *See Adidas*, 2008 WL 4279812, at *12 ("A reasonable royalty based on a hypothetical negotiation can be a measure of actual damages in a trademark infringement case.") (upholding damages award based upon a reasonable royalty determination where the award was consistent with royalties between Adidas and other third parties, and notwithstanding that there was no evidence of lost sales to Adidas and that the damages were higher than the infringer's net profit margin).  An award of $170,000 represents a rate of $10,000 per episode of *Retador Azteca* and is consistent with the license fees paid to Plaintiff by the Azteca Defendants pursuant to the 2005 and 2007 License Agreements.  *See* Compl., Exs. A (total license fee of $140,000 based upon $8,000 per hour of programming) and B (total license fee of $117,000 based upon $9,000 per hour of programming); Declaration of C. Scot Cru, filed concurrently herewith, ¶¶ 2-5; *see also* Declaration of A. Steckel, filed on May 6, 2008, ¶ 10 (identifying 17 episodes of *Retador Azteca* that were broadcast between January and May 2008).

Moreover, MapiTV's conduct was willful because episodes of *Retador Azteca* continued to air after Plaintiff sent a cease and desist letter to MapiTV and the Azteca Defendants.  *See also Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) ("Under the Lanham Act, infringement is willful, and thus triggers the enhanced statutory damages limit, if the defendant 'had knowledge that its actions constitute an infringement.'") (finding defendant's conduct was willful where plaintiff had sent letters explaining that defendant's activities were unlawful, but defendant continued to distribute

infringing software).  Plaintiff is therefore entitled to treble its damages for a total of $510,000.

**C.     MapiTV Is Liable For Statutory Damages For Copyright Infringement**

     1.     *Retador Azteca* Is Substantially Similar To *The Contender*

In addition, MapiTV's conduct constitutes copyright infringement.  To establish such infringement, a plaintiff must prove (1) ownership of a copyrightable work; and (2) copying of the work's protected elements.  *Survivor Prods. LLC v. Fox Broad. Co.*, No. CV01-3234, 2001 WL 35829270, at *3 n.2 (C.D. Cal. June 12, 2001) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992)).  In order to establish copying under the second element, the plaintiff must show that the allegedly infringing work is "substantially similar" to protectable elements of the plaintiff's work.  *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990).

A determination as to substantial similarity requires the court to examine the "extrinsic" similarity between "the plot, theme, dialogue, mood, setting, pace, characters, and sequence of events" of the two works.  *Narell v. Freeman*, 872 F.2d 907, 912-13 (9th Cir. 1989).  Next, the court must determine whether the two works are "intrinsically" similar, in that "the ordinary reasonable person would find the total concept and feel of the works to be substantially similar."  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).

Plaintiff is the owner of 42 copyrighted episodes in *The Contender* series.  *See* Compl. ¶ 52, Ex. C.  MapiTV infringed on these copyrights by using, copying, and reproducing material from these episodes in the production of *Retador Azteca*.  *Id.* ¶ 54. *Retador Azteca* follows the same concept and format as *The Contender*.  The similarities are summarized as follows:

| Element | The Contender | Retador Azteca |
|---|---|---|
| Plot, theme and concept | A reality, elimination-based TV show that follows two teams of | Same.  As explained by an Azteca America executive, |

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

|  | | |
|---|---|---|
| | boxers who compete with each other for a grand cash prize in a final championship round.  As "The Next Great Human Drama," the series combines the sport of boxing with the personal drama of the personal lives and struggles of each contestant. | "Half of the show will be about the boxers, their families, their homes and how they got where they are," and "the other half is the actual boxing."  On the show's website, it is described as a reality show that "mixes the drama of everyday life and the drama of intense sporting preparation," and summed up as "Victory and defeat in and out of the ring."  Cru Decl., Exs. N, O. |
| Contestants | Aspiring, relatively unknown male boxers with limited boxing experience.  Each contestant fall within the same weight class.  They form teams segregated by origin (e.g., East Coast v. West Coast; U.S. v. United Kingdom). | Boxers must all be featherweights with a minimum of 4 fights (maximum 20).  *Id.*, Ex. O.  They are split into teams between U.S. and Mexican citizens. |
| Host | Former boxing champion, "Sugar" Ray Leonard. | Former boxing champion, Jose "El Travieso" Arce.  *Id.* ¶ 31. |
| Setting | Boxers are sequestered from families and live and train in a shared compound.  The Season 1 finale was | Boxers are also sequestered from families and live in a group complex.  Finale was |

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| | held at Caesar's Palace in Las Vegas. | scheduled to be held at Caesar's Palace in Las Vegas. |
|---|---|---|
| Sequence of events | Each episode features a boxing match that determines which contestant is eliminated.  The bouts advance to a tournament and the finale ends with a championship match. | Same. |

This chart illustrates the substantial similarities between the copyrighted work (*The Contender*) and the infringing work (*Retador Azteca*).  Moreover, there was explicit copying of material from *The Contender* by members of MapiTV's production crew for the sole purpose of incorporating those elements into *Retador Azteca*.  Renteria Dec. ¶ 4. MapiTV has even confirmed watching episodes of *The* Contender in the course of producing *Retador Azteca* (albeit allegedly to "criticize the show," see Montero Dec. ¶ 13).  MapiTV and the Azteca Defendants have also on numerous occasion publicly announced that they were using *The Contender* format for *Retador Azteca*.  *See e.g.*, Cru Dec. ¶ 28, Ex. N; Compl. ¶ 34.

    2.    Statutory Damages Calculation

Statutory damages may be recovered in the sum of up to $30,000 for each of the copyrighted work.  17 U.S.C. § 504(c)(1) ("[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.").  *See also Microsoft Corp.*, 490 F. Supp. 2d at 882 ("Several courts have found statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers'

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
LA 127,757,362v4 11-10-08

control and is not disclosed."). Where the infringement was willfully committed, a plaintiff may recover $150,000 for each copyright infringed. 17 U.S.C. § 504(c)(2); *Microsoft Corp.*, 490 F. Supp. 2d at 881 ("If the plaintiff proves that the infringement was willful, statutory damages may be awarded up to $150,000 per copyrighted work infringed.").

MapiTV's infringement of the copyrights to *The Contender* episodes was knowingly and willfully committed. Compl. ¶ 56. Accordingly, MapiTV is liable to Plaintiff for $150,000 for infringing each of the 42 copyrighted episodes of *The Contender* (*see* Compl., Ex. C), which totals an amount of $6,300,000.

## D.   Plaintiff Is Entitled To Permanent Injunctive Relief Under The Lanham Act And Copyright Act

Plaintiff is entitled to injunctive relief for MapiTV's infringement of *The Contender* mark and copyrights to the episodes. *See* 15 U.S.C. § 1116(a); 17 U.S.C. § 502(a); *Microsoft Corp.*, 490 F. Supp. 2d at 882 (awarding a permanent injunction upon default judgment for violations of the Copyright Act and Lanham Act). Plaintiff seeks, therefore, a permanent injunction in the form attached to this motion.

A permanent injunction may be granted if a plaintiff shows "(1) that it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) 'that considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted'; and (4) it is in the public's interest to issue the injunction." *Microsoft Corp.*, 490 F. Supp. 2d at 882. *See also Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

Irreparable injury is presumed where there is an infringement of either a copyright or trademark. *Microsoft Corp.*, 490 F. Supp. 2d at 882; *Brookfield*, 174 F.3d at 1066. Moreover, "where there is potential for future harm from infringement, there is no

adequate remedy at law." *Microsoft Corp.*, 490 F. Supp. 2d at 882 (finding potential for future harm where defendant continued its infringing activities after notice from the plaintiff and the filing of this lawsuit).

Where an injunction merely requires a defendant to comply with the Copyright Act and Lanham Act, the balance of hardships warrant the issuance of a permanent injunction. *Microsoft Corp.*, 490 F. Supp. 2d at 883.  Further, it an injunction is in the public's interest when enjoining a defendant's activities would further the purposes of the trademark and copyright laws.  *Id.*; *see also Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985) (stating that by enacting the Lanham Act, "Congress determined that 'a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them'").

A permanent injunction is warranted here because Plaintiff has invested substantial time, effort and expense in developing and promoting *The Contender*, a quality reality-TV series; and in this circumstance, sought to expand a critical market base by producing *The Contender* in Spanish.  Further, MapiTV's continued infringement after Plaintiff sent a cease and desist letter underscores the potential for future harm.  The continued production and broadcast of *Retador Azteca* or any other reality TV show that infringes upon Plaintiff's trademark and uses the same format of *The Contender* series will undermine Plaintiff's reputation and the popularity of its show among viewer, and thwart efforts by Plaintiff to introduce a Spanish-language version of *The Contender* to the same market that it has developed through its prior licensing arrangements.

### E.   Plaintiff Is Entitled To Recover Its Attorneys' Fees

Plaintiff further seeks attorneys' fees pursuant to the Lanham Act (15 U.S.C. § 1117(b)) and the Copyright Act (17 U.S.C. § 505).  Plaintiff seeks a fee award in the amount of $139,800, which is pursuant to the formula prescribed by Local Rule 55-3 ($5,600 plus 2% of the amount over $100,000).

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# IV.   <u>CONCLUSION</u>

Based upon the foregoing reasons, Plaintiff respectfully urges this Court to grant Plaintiff's motion for default judgment against MapiTV.

DATED:  November 10, 2008          Respectfully Submitted,

GREENBERG TRAURIG, LLP

By:<u>/S/ John M. Gatti</u>
      John M. Gatti
      John J. Lucas
      Lori Chang
      Attorneys for Plaintiff
      CONTENDER PARTNERS, LLC

LA 127,757,362v4 11-10-08

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
LA 127,757,362v4 11-10-08